In re **BIRCHMINSTER CORPORATION OF CALIFORNIA d/b/a Central Valley Steel and Pipe Company (Jointly administered with Birchminster Industries, Inc., Bankruptcy No. 80–00185K) Debtor.**

**Bankruptcy No. 80–00221K.**

United States Bankruptcy Court, E. D. Pennsylvania.

Sept. 26, 1980.

---

Erwin Pincus, Philadelphia, Pa., for debtor–Birchminster Corp. of California.

Thomas Holman, San Francisco, Cal., Horace A. Stern, Philadelphia, Pa., for creditors' committee.

1. This Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 752.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The creditors' committee has filed the present motion seeking an order transferring venue in the case of Birchminster Corporation of California, d/b/a Central Valley Steel and Pipe Company, to the United States Bankruptcy Court for the Eastern District of California, at Fresno. Security Pacific National Bank, the major secured creditor in the case, supports and has joined in the motion.[1]

On January 25, 1980, Birchminster Industries, Inc. filed a petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of Pennsylvania. Subsequently, on February 1, 1980, Birchminster's wholly–owned subsidiary, Birchminster Corporation of California, trading as Central Valley Steel and Pipe, the present debtor, also filed a Chapter 11 petition with this Court. It is agreed that venue properly lay in the Eastern District of Pennsylvania under 28 U.S.C. § 1472 which states:

"[A] case under title 11 may be commenced in the bankruptcy court for a district—

\*     \*     \*     \*     \*     \*

(2) in which there is pending a case under title 11 concerning such person's affiliate . . ."

The question presented for decision is whether, despite proper venue, the case should be transferred to the Eastern District of California. Because we find that transfer of this proceeding is in the interest of justice and for the convenience of the parties, the instant motion will be granted.

The question of the transfer of a case under Chapter 11 is governed by § 1475 of Title 28, United States Code. Section 1475 which concerns the change of venue of cases originally filed in either the proper or improper venue is not to be confused with § 1477 which only deals with transfer of

cases filed originally in the wrong district, 1 *Collier on Bankruptcy*, para. 3.02[4][a] at 3–196 (15th ed. 1979). In circumstances, such as this, where jurisdiction exists and venue is proper, § 1475 is applicable and provides:

A bankruptcy court may transfer a case under Title 11 or a proceeding arising under or relating to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

■ Thus, the test for transferring a properly filed case is twofold: the interest of justice and the convenience of the parties. This standard under § 1475 is the same as it was under Bankruptcy Rule 116(b)(1) and the cases decided thereunder remain persuasive. *Id.*, para. 3.02[4][d] at 3–202. *In re Macon Uplands Venture*, 2 B.R. 444 (Bkrtcy.D.Md.1980).

■ In general, the factors by which courts are prone to judge whether venue should be changed include: (1) proximity of creditors and the bankrupt to court; (2) proximity of witnesses necessary to the administration of the estate; (3) location of the assets; and (4) the economic and efficient administration of the estate. *In re Bankers Trust*, 403 F.2d 16, 23 (7th Cir. 1968); *In re Button Co.*, 137 F. 668, 672–3 (D.Del.1904); *In re Kerr's, Inc.*, 253 F.Supp. 742 (S.D.N.Y.1966), *aff'd* 360 F.2d 163 (2nd Cir.1966); *In re Macon Uplands Venture*, *supra*, at 445.

■ The courts have also used the twofold tests of "convenience of parties" and "in the interest of justice" to give consideration to the following factors in connection with the transfer of a particular proceeding:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing witnesses; (3) the enforceability of judgment if one is obtained; (4) relative advantages and obstacles to a fair trial; (5) a local interest in having localized controversies decided at home; and (6) a trial in the

state the laws of which will govern the action. *In re Macon Uplands Venture, supra*, 1 *Collier on Bankruptcy*, para. 3.02[4][b] at 3–200, 3–201 (15th ed. 1979 and cases cited [5] herein). These criteria are relevant under § 1475 and are to be applied on a case–by–case basis. The burden of establishing that the case should be transferred is on the moving party and must be shown by a fair preponderance of the evidence. *United Button, supra* at 673; *In re Fairfield Puerto Rico, Inc.*, 333 F.Supp. 1187, 1189 (D.Del.1971); *In re Macon Uplands Venture, supra*.

The debtor argues that a change of venue violates the principle of "economy of administration" in that the transfer of the proceedings from Pennsylvania to California would entail dual administration, at great expense. While counsel's point is well taken, this is merely one of the many considerations that must be weighed by the court.

In *In re United Button Co., supra*, the court stated:

What may be for the greatest convenience of parties in interest does not necessarily depend upon only one fact or circumstance entering into the situation. Proximity of the place of the bankrupt to the court entertaining the proceedings in bankruptcy, though a circumstance entitled to weight, is by no means conclusive, . . . Proximity of a majority of the creditors of the bankrupt in number or amount of their claims is a circumstance which should also be duly weighed.

*Id.*, at 672

■ The first factor to be considered is the proximity of creditors to the court. Counsel for the moving party, by failing to introduce into evidence either the claims docket or the relevant schedules has limited the court's inquiry into this factor. In their memorandum of law, counsel has attempted to establish the various percentages of creditors found in the judicial districts. This court may consider only the evidence presented at the trial, not other evidence which may have been in the files of the administration proceeding. *In re Aughenbaugh*, 125 F.2d 887 (3rd Cir. 1942); *In re*

*Stridacchio,* 107 F.Supp. 486 (D.N.J.1952). *See also In re Crown Sportswear, Inc.,* 575 F.2d 991 (1st Cir. 1978). The *Aughenbaugh* court stated:

> To hold otherwise would be to violate the fundamental concept of procedural due process that a party to litigation is entitled to have the evidence relied on by his opponent presented at the hearing of his case so that he may have opportunity to cross–examine his opponent's witnesses and to offer evidence in rebuttal. As the Supreme Court said in *Interstate Commerce Commission v. Louisville & Nashville R. Co.,* 227 U.S. 88, 93, 33 S.Ct. 185, 187, 57 L.Ed. 431, "manifestly there is no hearing when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute." And again as stated in *United States v. Abilene & Southern R. Co.,* 265 U.S. 274, 288, 44 S.Ct. 565, 569, 68 L.Ed. 1016: "Papers in the Commissioner's files are not always evidence in a case. New England Divisions Case [*Akron, C. & Y. R. Co. v. United States*], 261 U.S. 184, 198, note 19, 43 S.Ct. 270, 276 note 19, 67 L.Ed. 605. Nothing can be treated as evidence which is not introduced as such." Particularly apposite is the statement of Chief Justice Hughes in *Crowell v. Benson,* 285 U.S. 22, 48, 52 S.Ct. 285, 291, 76 L.Ed. 598, that "Facts conceivably known to the deputy commissioner, but not put in evidence so as to permit scrutiny and contest, will not support a compensation order." If this is the rule as to administrative bodies which are expected to apply their expert knowledge in their special field a fortiori it applies to the proceedings of a purely judicial body such as a court of bankruptcy.

*Id.,* at 889

■ Thus, it appears that our review is limited to the testimony and evidence presented at trial. The testimony of the president of the debtor corporation revealed that of the total number of creditors, approximately seventy or eighty percent, are located in California with no creditors in Pennsylvania. [N.T. 19]. The veracity and credibility of the witness's testimony has not been questioned and is accepted as establishing that the majority of creditors are located in California.

The location of the debtor is the second factor to be considered. Testimony disclosed that the Board of Directors of the debtor, consisting of one man, meets in Pennsylvania [N.T. 10] and that its policy decisions are made here. [N.T. 24]. The daily operating decisions for the debtor are made in Fresno, California. [N.T. 15]. The chief operating officer of the debtor operates out of and resides in Fresno, California. *Id.* Of the approximately nineteen (19) employees of the debtor corporation, fifteen (15) are located in Fresno; two (2) in Chico, California; one (1) in Windsor, California; and one (1) in Carson City, Nevada. [N.T. 14]. The debtor employs no persons in Pennsylvania. [N.T. 14, 15]. In addition, the books and records of the debtor are maintained in Fresno, California.

From the foregoing, it is clear that the debtor's business is conducted in California and not Pennsylvania.

In summary, the majority of creditors, the chief operating officer, and the books and records of the debtor are located in California. It seems clear that those witnesses who would be competent to testify concerning the business and operations of the debtor are those located in California. Should appraisals or other expert testimony be necessary, the most reliable valuations will be obtained from California appraisers who have knowledge of the Fresno area and the business climate.

The testimony of the President and chief operating officer of the debtor also disclosed that its assets are located in Fresno, Chico and Windsor, California and Carson City, Nevada. [N.T. 19]. No assets are located in this district or in any other location. *Id.*

The court finds that since the property and assets are located and being operated in California, rulings may be required to be made in accordance with the laws of the state of California. The United States Bankruptcy Court for the Eastern District

of California at Fresno would be in a better position than this court to make those rulings.

The court also finds that this case would be more conveniently administered by the court which is closest to the property and to the majority of the creditors, since that court would be in the best position to meet any emergency situations that may arise; answer inquiries which may be raised; grant approvals and authorizations that may be requested; and be in closer touch with the property, its condition and operation; and be in a better position to evaluate any appraisals and the appraisers who make such appraisals.

In the case of *In re Kerr's, Inc., supra,* the court granted a motion for change of venue with respect to one of five (5) debtor corporations in Chapter XI proceedings filed in the Southern District of New York. Venue was changed to Minnesota for one corporation because all its operating assets (consisting of retail department stores), its operating officers and its books and records were in Minnesota. Also, many of its creditors were in Minnesota (18.6% in number and 22.7% in amount), although slightly more of the creditors were located in New York (18.8% in number and 45% in amount). Although the court believed that the New York office of the debtor was the "policy making head and source of working capital for each of the subsidiaries," 253 F.Supp. at 744, nevertheless the court held that in the interest of justice and the convenience of the parties, venue should be changed to Minnesota. The court pointed out that in the absence of consolidation for substantive purposes, each corporation would have to file a separate plan of arrangement and deal with its creditors separately in order to gain the requisite majorities of acceptances so that there was no reason why the administration of the cases could not proceed in separate bankruptcy courts.

In the case of *In re Ocean Sea Breeze, Inc.,* 11 CBC 306 (M.D.Fla.1977), the court granted a motion for change of venue with respect to two (2) of three (3) affiliated debtor corporations in Chapter XI proceed-ings filed in the Middle District of Florida. Most of the creditors and all of the assets and books and records of the transferred corporations were located in St. Louis, Missouri. Therefore, the bankruptcy court transferred the cases to the U.S. District Court for the Eastern District of Missouri. The debtor had argued, *inter alia,* that venue was proper in the Middle District of Florida because of a pending Chapter XI case in that court involving an affiliated corporation, Winter Park, Inc. However, in dismissing the debtor's contention, the court stated that the presence of the affiliated corporation is a "slender reed . . . on which to hang the affairs of these two debtors."

In the case at bar, it is uncontradicted that the corporate stock of the debtor is pledged as collateral security to Michigan Metal Processing Corporation for a debt owed to Michigan Metal by Birchminster Industries, Inc. In its answer, the debtor contends that this court must adjudicate the issues of fact and questions of law pertaining to that debt and pledge in conjunction with the proposal, funding and confirmation of a plan proposed by the debtor. Such a contention is premature at this time in that there are no outstanding issues of fact and questions of law pertaining to that transaction. The prospect of litigation in and of itself is not sufficient to disturb our finding here. Furthermore, any prospective litigation may well be brought and concluded in the Bankruptcy Court for the Eastern District of California if, in fact, the action involves the debtor. If the parent corporation, Birchminster Industries, Inc., is a party in interest, this court may accept jurisdiction and adjudicate the dispute here. Such a determination is not within the scope of our inquiry and is far too speculative.

Thus, we find that the moving party has established that the balance of interest is strongly in their favor. *B. J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091, 1103–4 (E.D.Pa.1977). Those factors which strongly favor transfer of the case sufficiently outweigh the possibility of dual administration here. While this district is the forum

of choice for the debtor and the home forum of its one–man Board of Directors, its local counsel and its accounting firm, these factors are not as persuasive as are the four (4) primary considerations outlined earlier. (p. 260, above).

Having given due consideration to the many significant factors to be considered in deciding questions of transfer and in the interest of justice and the convenience of the parties, we find that the creditors' committee has sustained its burden of proof in establishing that the Chapter 11 case filed by the debtor should be transferred to the Eastern District of California at Fresno.

Accordingly, an appropriate Order will be entered.